ALBANY,
Jan. 1814.

HUMPHREYS *against* GARDNER.

HUMPHREYS
v.
GARDNER.

THIS was an action of *replevin*, which had been brought before this court, by a writ of error, from the court of common pleas of *Orange* county, the judgment of which court was reversed and a *venire de novo* awarded, returnable at the *Orange* circuit, (see 10 *Johns. Rep. 53.*) where it was tried the 14th of *September*, 1813.

The declaration was in replevin for *household* goods, &c. There was an *avowry* for rent due the defendant, and that the plaintiff, for one year, ending the 1st of *May*, 1811, and from thence until, &c. occupied the house in which, &c. as tenant of the defendant, under a demise, for the yearly rent of 100 dollars, &c. and because one year's rent was due, &c. he, the defendant, well avows the taking, &c. The plaintiff pleaded that he did not hold, &c. as *tenant* of the defendant, &c. on which issue was joined.

At the trial, *T. E. Colden* testified that he was present at a conversation between the plaintiff and defendant and *William Ross,* Esq. on the 1st of *May*, 1810, in which it appeared that *Ross* had let a house to *Humphreys* for a year, and who was then about to enter and take possession of it, when *Gardner*, who claimed a right to let the house, forbade him; that it was then agreed between *Ross* and *Gardner*, in the presence of *Humphreys*, to submit the question, to which of them the rent should be paid, to the decision of *J. Fisk* and *J. Storey*, Esquires, as arbitrators, and that, in the mean time, *Humphreys* should enter into the house, to which agreement, he, *Colden*, was called as a witness, and that *Humphreys* took possession of the house, &c.

*Storey* testified that *Gardner* informed him that *Ross* and he had agreed to submit to him and *Fisk* to whom the rent should be paid; and the witness understood the same from *Ross*, who requested him to act as an arbitrator, and he thought, also, that *Humphreys* spoke to him and wished the question decided; that the witness and *Fisk* met as arbitrators, and *Gardner* and *Ross* appeared before them and stated their respective cases, and that, after hearing the parties, the arbitrators awarded that *Humphreys* should pay the rent to *Gardner*, and the witness soon afterwards

R. let a house to H. for a year, who being about to take possession, a dispute arose between R and G as to which of them had a right to receive the rent, and they agreed, in the presence of H., and with his approbation, to submit the question to the decision of F. and S., as arbitrators, and that H. should, in the mean time, take possession of the premises. The arbitrators, after hearing the allegations of R. and G., decided that H. should pay the rent to G. Both R. and G. had *notice* of the decision, but it did not appear that actual notice had been given to H It was held that H. was bound to take notice of the award, at his peril, he being privy to the submission and assenting to it, and entering into the possession of the premises, at the time, with knowledge of the submission of the parties claiming the rent.

informed *Ross* of the decision, who said the arbitrators had mistaken the question, &c.

*Fisk*, who was also a witness, testified substantially to the same facts, and that he informed *Ross* and *Gardner* of the decision of the arbitrators, in *May*, or the beginning of *June*, 1810.

On this evidence, the counsel for *Humphreys* objected, 1. That it did not appear that the plaintiff occupied the premises under any demise; 2. That it did not appear that *Humphreys* was a party to the submission, and, therefore, ought not to be bound by the award; 3. That it did not appear that the arbitrators had published their award; 4. The submission being by *parol*, it was not valid so as to affect the right to real property; but these objections were overruled by the judge.

The son of the plaintiff was then sworn as a witness, and testified that on the 1st of *May*, 1810, when his father was about moving into the house, as a tenant to *Ross*, an altercation arose between *Gardner* and *Ross*, and the plaintiff wished them to decide to whom the rent was to be paid; and thereupon *Gardner* and *Ross* agreed to submit the matter to *Fisk* and *Storey*, as arbitrators; that he understood the question submitted was, whether it was competent to *Gardner*, who was a co-executor, to give a lease to *Ross*.

It being objected that there was no proof that *Humphreys* had *notice* of the award, the judge decided that it was necessary to show there was notice before he could be charged. The counsel for *Gardner* then attempted to prove a *notice*, and insisted that it ought to be left to the jury, from all the circumstances, to presume a notice to *Humphreys;* but the judge said that there was nothing shown to authorize such a presumption, and he charged the jury that for want of such notice, *Humphreys* was entitled to a verdict, and the jury found a verdict accordingly.

A motion was made to set aside the verdict, and for a new trial.

*Fisk* and *Storey*, for the defendants. They cited 2 *Chit. Pl.* 80, 81. note. 2 *Saund.* 62. *a.* note (4). *Bulst.* 144. 2 *Caines' Rep.* 320. 1 *Ld. Raym.* 114. 10 *Johns. Rep.* 143. *Cro. Car.* 133.

*Ross* and *P. Ruggles*, contra. They cited *Kyd on Awards*, 115. 1 *Bay's Rep.* 315. 1 *Esp. Dig.* 206.

1

*Per Curiam.* It was proved upon the trial, by *Colden*, that on the 1st of *May*, 1810, there was a dispute between the defendant, *Gardner*, and one *Ross*, as to which of them belonged the right to let the house in question to *Humphreys*, and *Humphreys* being then in the act of moving in, it was agreed by *Gardner* and *Ross*, *in the presence of Humphreys*, to submit to two persons, then named as arbitrators, to determine to which of them *Humphreys* was to pay the rent for the ensuing year. The two arbitrators prove the same facts substantially, and one of them says he thinks *Humphreys* spoke to him and wished the question decided, and a son of *Humphreys*, introduced by him, also stated the same controversy and submission, as stated by *Colden*, and that *Humphreys* said, at the time of the altercation, that he wished *Gardner* and *Ross* would determine to whom he should pay the rent, and the submission to arbitration was thereupon made. The arbitrators met and heard the allegations of *Ross* and *Gardner*, and decided in the same month of *May*, 1810, that the rent ought to be paid to *Gardner*. Upon these facts, the question of notice to *Humphreys* of the award does not arise. He was bound to take notice of the award at his peril, for he was present when it was submitted to the arbitrators to determine to whom he should pay the rent, and it was in proof that he was privy to the submission, and the conclusion is irresistible that it was so referred with his approbation. The parties claiming respectively the right to let, interpleaded, as it were, in his presence, and agreed to refer the question to the arbitrators, and he entered into possession with the knowledge of that interpleader and submission, and at the time it took place.

A new trial ought, therefore, to be awarded, with costs to abide the event of the suit.

New trial granted.